My client's leg was cut off and Robbie Gerold six died as a result. There is no question as to who was the primary culpable party in this case. It was the young Mr. McKeough who wasn't paying attention while he was going 50 miles an hour in a much larger boat. But the real question that was presented with respect to the first issue that I've raised in my brief is whether some portion of the responsibility for this accident does in fact belong to Robbie, if I can call him that, to separate him, whether Robbie was in fact at fault. And the central question with respect to his fault is the dramatic reduction in speed as he was proceeding on the lake. There is no question that there was sort of a black box associated with this boat. That black box I think showed within seven seconds that he reduced his speed from 50 miles an hour to 4 miles an hour. So there was in fact a dramatic reduction in speed and the question became whether that could be a basis on which the jury could find him at least partially at fault for this accident. Let me ask, you know, we have a canon of statutory interpretation that that says we must interpret statutes in a manner that provides, rather that argues against unreasonable results. Isn't it unreasonable to read the INR 17a in a way that requires maintaining a particular course and speed regardless of whether or not there has been any kind of notice of overtaking? Because these rules require that, you know, if there's gonna be a notice of overtaking you do something. You've asked it in a very interesting way because you refer to it as notice. The fact is that the trial judge in this case found that it had to be signaling under 34. Okay. But your question with respect to notice is very interesting to me because the notice, our argument here, and it is supported by the case law, is notice can come from something other than signaling. That's the position that I think should prevail in this situation because the fact is that in granting summary judgment, the trial judge made a very important finding. He made it with respect to the other INRs that were still at issue in the case, but he found specifically in his ruling on summary judgment that Robbie was, there was an inference from the evidence that Robbie was aware of the fact that this boat was behind him going in precisely the same direction to the precisely the same place. That is, that is in the judge's ruling on summary judgment. Now what, what the simple fact is, notice, as you've asked, notice can come from at least two sources according to the case law we've cited. Notice can obviously come from signaling requirements of 34, but in point of fact it can come from something else. That's the Osceola. That's the Howard. I've also cited the Farwell discussion of the Howard case out of the Fourth Circuit. Farwell in a way is one of the leading commentaries on boat versus boat encounters nautically, and Farwell cites specifically the Howard case for the proposition that where an there is fault associated with that, but there can be fault associated with the overtaken boats maneuvering if in point of fact they are aware that, aware of the fact that the overtaking boat is in fact directly behind them. So a visual observation would be a kind of notice that. Exactly. Sure. And that's the Osceola case I've cited. That's the Howard case. Now another point applicable to your question with respect to statutory interpretation, I think, is the Robinson case out of this court, because Robinson is a case that again had, I believe it may have predated, Rule 34, but Robinson was a case where there was in fact no notice by the overtaking boat. However, however, there was a violation of another INR, we'll call it, it may have predated the INRs, but there was another INR violated by the overtaken boat. And the Robinson court, in terms of a statutory interpretation of these INRs, did not say that the overtaken boat was in fact free of fault. What the Robinson court said was, yes, obviously the INRs, including in that particular situation, keeping a lookout. It was a barge and there was supposed to be somebody keeping a lookout. That is not an issue we have raised in this case. But the fact is, the issue that we have raised in this case, with respect to Rule 17a1, is in fact, let me start again, the fact is that the absolute rule that the trial judge set, that in fact 34a must be complied with if you are going to trigger the obligations imposed by the course and speed requirement of 17a. He ruled that it is in fact an absolute. Well, Robinson, if read carefully, refutes that proposition, because in violation of what is now Rule 34. And yet there was some fault to be attributed. Just a second. Isn't Robinson pretty much distinguishable on its facts, because liability in Robinson was based on the fact that the vehicle was not properly manned with the lookout. It was not based on a failure to maintain course or speed under 17a1. I have never suggested that it is factually on point. My point is simply this, that the trial judge in this case ruled that 34a is an absolute. Failure to comply with 34a's signaling requirement obviates any responsibility on behalf of the judge. It sounds like you want us to modify that rule somehow. No, no. What the suggestion from the Osceola, suggestion from Robinson, I would suggest as well. I can concede, Judge Marbley, that in point of fact it is distinguishable. But what is not distinguishable, in my estimation, is the fact that 34a is not absolute in what rule you would urge upon us. There's obviously a huge issue of fact in this case as to whether, in point of fact, the accident happened as the young people in the boat described it. There is therefore a considerable question of fact as to whether Robbie knew that the boat was directly behind him. But even the fact, there is a question of fact as to whether he did. And the simple fact is that issue should have gone to the jury. The question of whether this dramatic reduction in speed, obviously it would have been a violation of 17a had there been a signal, an obvious violation of 17a. The question is whether that duty under 17a is automatically set aside, but if there's been non-compliance with Article 34 and the Osceola, the Howard, and Farwell, one of perhaps the leading authority in the field, says in its interpretation of the Howard case that in fact it isn't an automatic elimination of any other duty that you have under the INRS. And my suggestion is Robinson says the same thing. Is that argument in conflict with or inconsistent with the Second Circuit's decision, and I think it's the industry case, which seems to say you have to signal under Rule 34. I can't deny that that statement is there. Now I don't know if it is talking about precisely the same facts that we're dealing with here. But if the essence of the Second Circuit case is in my estimation contrary to, obviously not the letter, but certainly the the ultimate holding in Robinson that there isn't an automatic elimination of the duties that apply under 17a where there has not been compliance with 34. You know, but following up on Judge Marley's question, in this case there was no issue before the jury as to whether the boat was properly manned with the lookout, right? Of course not. The simple point I'm making is Robinson stands for the proposition that where you have a failure to signal by the overtaking boat does not automatically result in no potential liability against the overtaken boat if that overtaken boat violates an INR. And you cite Robinson as the authority? Well Robinson is, as Judge Marley has noted, not directly on point factually. Osceola is. Howard is. Howard's out of the Fourth Circuit. At least he was affirmed by the Fourth Circuit. And again, Farwell says the same thing. Okay, those three cases. Thank you. Okay, you'll have your full rebuttal, Mr. Granzato. May it please the court, Mary Masseron Ross on behalf of the defendants' apologies, the estate of Robert Jack Jarosik and Jack Jarosik. With me at council table is trial counsel Mark Verweis. Also here is the representative for the McKeows, but since no argument was made with respect to them, I'll just proceed. As to the estate, the only issue is whether there was a reversible error in granting summary judgment on the claim insofar as it was based on Rule 17a1. There's three principal reasons in support of an argument before the trial court that the jury should have been permitted to determine whether Robbie knew or should have known about the motorcraft as it related to Rule 17. That argument was raised with respect to a number of the other INRs, all of which the judge allowed to go to the jury. It was not raised here, and therefore the easiest course to a decision is simply to conclude that a waiver occurs. We parsed through, quoting from the brief and the trial record, and I'm confident if the court looks at the precise arguments in the brief in the trial court and the ruling, it will be apparent that that factual dispute issue with respect to this rule was never raised below. Secondly, we believe the court properly interpreted Rule 17 and Rule 34 and correctly concluded that 17 doesn't apply absent a signal, and I will address the case law. I think there's a way to reconcile it that's supportive of the district court's opinion. And finally, we've argued that any error was harmless because the trial judge did present the factual dispute about negligence, did instruct the jury, in fact, on the presumption that if there was error in any of these other INRs, that that would shift the burden of proof, and therefore sending this case back for another trial in this circumstance given this record doesn't make sense. It would only lead to the same result, require a lot of cost and energy, both on the part of the parties, and certainly the Jurovcic family does not want to go through another trial and isn't the right thing under the case law. Let me go back, if I could, to focus a little bit on the reading of the rules. The trial court properly relied upon the case of the industry, which is a Second Circuit case, and that case said very clearly that the overtaking vessel has to signal and there isn't any obligation for the overtaken vessel, it's not going to be at fault, where the overtaking vessel is at fault for not keeping enough distance. In other words, it's the overtaking vessel's obligation to keep far enough back so that it can deal with any unexpected changes in speed, which is the issue here. And that industry decision cited to U.S. Supreme Court case and noted that that U.S. Supreme Court line of authorities, which are cited in the industry and many of which are cited in our brief, have never been overruled. It's the obligation of the overtaking vessel to stay far enough back, and that only makes sense. That's what the rules are intended to do, when you're out on the water, unlike on a highway, boats can come in all sorts of directions and they can turn in all sorts of directions. There aren't clear markers that you can only turn at the corner the way there is on a highway. And therefore, the rules are intended to take that into account, and that's why Rule 17 and Rule 34 really have to be read together. Now, counsel has cited a number of other decisions and suggested that the trial court was wrong and that there should have been a different outcome. And I would submit that those cases come in two general categories. In one category of those cases, the argument is this Rule 17A1 was violated, and the court concludes, despite the absence of a signal, which is our argument, the entire case should not be dismissed. That is, the absence of a signal doesn't end the entire case, but lets the claim of negligence go if there is some issue. And that's what the judge did here. The judge said, okay, we're not going to find a violation of 17A1. We're going to let you go to the jury with INRs that have to do with safe speed, maintaining a lookout, and so forth. All of that was tried to a jury, and the jury found Robbie was not negligent. But the second category of cases are cases in which the overtaking vessel fails to signal, comes next to the overtaken vessel so that it is not directly behind. And the cases, I think, are uniform, that there's no obligation to look behind. But when the overtaken vessel comes to the side so that it is visible to this side or that side, and the Osceola case even uses the language one side or the other, specifically, that's a direct quote. At that point, if the overtaken vessel says, well, you didn't signal, so I'm going to turn anyway, there can be liability on the part of the overtaken vessel. We don't have those facts here. There's no suggestion that the overtaking vessel, the mastercraft, was next to, visible from this side or this side or in front. It is very clear, everyone agrees, that the overtaken vessel was, overtaking vessel was behind. And therefore, there was no duty for Robbie to know about it or to look behind him as he's steering the jet ski. That's a very critical point, it seems to me. And the case law, as well as the practical understanding of what makes sense and supports, I think, what the trial court did. Now, there's a lot of discussion also about, well, why did the jet ski slow? And did it slow abruptly or suddenly? And the testimony from the experts was that the jet ski, first of all, could not abruptly, dramatically slow. This is a vehicle that doesn't have brakes. So the only way it can slow is by stopping the throttle and coasting to a stop. That is not an abrupt, sudden stop, like somebody slamming on the brakes, or like as an airline jet lands and they do the reverse thrust and they stop very quickly on a runway. And even the plaintiff's expert agreed that that is not an accurate characterization of the nature of the stop. But regardless of that, the expert testimony is also very clear that within the framework of the distance that these vessels were at, had Jack been looking, which tragically he was not, he had plenty of time to turn off or to stop, even given that the jet ski had slowed and coasted to a stop or to a four-mile-an-hour point. So that, I think, is important to keep in mind. Finally, there's a lot of speculation and discussion in the record and in the briefing about, well, why did he do this? The cases are very clear that somebody has a right to stop and, in fact, even with the big sea-going vessels, have a right to stop to turn into where they were going. They are not obligated under these rules to continue on if their course is to go into a port or something. All of that is very clear in the record. I see my light is on. It is. I'm happy to answer any further questions. Apparently there are none and was a decision made that the counsel for Mr. McEilas is not presenting argument today? Okay. Okay. Thank you. Thank you. The suggestion has been made here that this was, in fact, an absolute. The trial judge, in ruling on the motion for summary judgment, said with respect to Rule 34, the overtaken vessel's duty to main course and speed does not arise until the overtaking vessel has made its presence known. That was the fundamental basis for the trial court's decision and the simple fact is you do not have to make your presence known when, in point of fact, you know where the overtaking boat is and that's the essence of this position. Now there's been a lot of talk about whether he slowed. Well, the simple fact is the black box shows that he slowed from 59 miles per hour to four in seven seconds. Now that is not maintaining course and speed under Rule 17a, no The fact is we don't know. We don't know precisely why Robbie made this dramatic reduction in his speed. What we can infer, however, is that at the time he made that dramatic reduction, he was, in fact, aware of what was behind him and again the trial judge, in his decision on summary judgment, specifically said I'm letting these other INR violations go to the jury precisely because there is an issue of fact with respect to whether he did know. Now with respect to waiver, the court has to be aware that Robinson was argued strenuously in the trial court with respect to the application of Rule 34 in this context. The only reason that Robinson would be argued in this context is to demonstrate that, as I argued before, 34 is not an absolute when there is, in fact, a violation of another INR and that's what Robinson stands for. Okay, well thank you counsel for your arguments today and we we do appreciate them. The case will be submitted and you may call the next case.